UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| MARY LOUISE BELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 2:16-CV-327 |
| v. | ) |
| | ) Judge Curtis L. Collier |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, ASPEN TITLE AND ESCROW, LLC, TN, FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, and CIT BANK, N.A., | ) |
| | ) |
| Defendants. | ) |

## **M E M O R A N D U M**

Before the Court is a motion to remand for lack of subject matter jurisdiction filed by Plaintiff, Mary Louise Bell. (Doc. 10.) Plaintiff argues diversity jurisdiction does not exist because she and Defendant Aspen Title and Escrow, LLC, TN ("Aspen Title") are both citizens of the state of Tennessee and the amount in controversy does not exceed $75,000. Defendants Federal National Mortgage Association ("Fannie Mae") and CIT Bank, N.A. ("CIT Bank") responded in opposition to Plaintiff's motion. (Doc. 18.) Aspen Title has not responded to the motion to remand. Defendant Financial Freedom Senior Funding Corporation ("Financial Freedom") has not yet appeared in the action and does not appear to have been served. The time for Plaintiff to file a reply in support of her motion has expired, and this matter is now ripe. For the reasons set out below, the Court will **DENY** the motion to remand.

Also before the Court is a motion to dismiss filed by Defendants Fannie Mae and CIT Bank (collectively, the "Moving Defendants"). (Doc. 7.) The Moving Defendants argue Plaintiff's claims against them should be dismissed under Rule 12(b)(6) of the Federal Rules of

Civil Procedure for failure to state a claim on which relief can be granted. Plaintiff responded in opposition (Doc. 19), and the Moving Defendants replied (Doc. 22). For the reasons set out below, the Court will **GRANT** the motion to dismiss.

I. **BACKGROUND**[1]

On August 8, 2008, Plaintiff obtained a reverse mortgage from Financial Freedom on the real property known as 406 Putters Court in Church Hill, Tennessee (the "Property"). The value of the Property in 2008 was $156,700. In connection with obtaining the reverse mortgage, Plaintiff executed various instruments, including a note in the amount of $285,000; an Adjustable Rate Home Equity Conversion Deed of Trust (the "First Deed of Trust") in favor of Financial Freedom, recorded in Book 920, Pages 693–703, instrument number 08006912, in Hawkins County, Tennessee (Doc. 7-1); and an Adjustable Rate Home Equity Conversion Second Deed of Trust (the "Second Deed of Trust") in favor of the Secretary of Housing and Urban Development (the "Secretary"), recorded in Book 920, Pages 704–713, instrument number 08006913, in Hawkins County, Tennessee (Doc. 7-2). Aspen Title was named as the trustee in both Deeds of Trust.

Financial Freedom's interest in the First Deed of Trust was transferred, through Mortgage Electronic Registration Systems, Inc., to CIT Bank on October 22, 2015. (Doc. 1-1 at 26–27.) On March 16, 2016, CIT Bank substituted Shapiro & Ingle, LLP ("Shapiro") for Aspen as trustee as to the First Deed of Trust. (*Id.* at 29.)

---

[1] This summary of the facts is drawn from Plaintiff's Complaint and the exhibits attached to Plaintiff's Complaint. Because a number of pages are missing from certain of the exhibits attached to Plaintiff's Complaint, the Court has also referred to the complete copies of those exhibits supplied by Defendants without objection from Plaintiff. Because all of the cited exhibits are contracts or other legally effective documents, where the exhibits contradict Plaintiff's allegations, the Court has relied on the facts as set out in the exhibits. *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441 (6th Cir. 2012).

Plaintiff made all of the mortgage payments she was required to make and paid her county property taxes. She did not, however, pay her city property taxes or maintain flood insurance on the Property as required under the Deeds of Trust.

On May 17, 2016, Shapiro, as trustee, foreclosed on the First Deed of Trust and sold the Property to CIT Bank for $180,836. (*Id.* at 30–31.) CIT Bank transferred its interest in the Property to Fannie Mae the same day. (*Id.*) Following correspondence with Plaintiff and communications with her counsel, Fannie Mae filed a detainer warrant in the General Sessions Court for Hawkins County, Tennessee on September 23, 2016. (*Id.* at 34–36.)

Plaintiff filed this action in Chancery Court for Hawkins County on October 12, 2016. (*Id.* at 4–14.) The Complaint does not enumerate any causes of action. The demand section, however, seeks a restraining order and injunction against Defendants to prevent them from proceeding with the eviction; asks to have both Deeds of Trust set aside, found to be unconscionable, and declared null and void; and asks to have Plaintiff's rights in the Property restored to her. The body of the Complaint also characterizes the Defendants' actions as fraud, as a violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 *et seq.* (the "TCPA"), and as the intentional infliction of emotional distress on Plaintiff.

Defendants CIT Bank, Fannie Mae, and Aspen removed the action to this Court on October 24, 2016 based on diversity jurisdiction, alleging Aspen is a fraudulently joined and nominal party whose citizenship should not be considered for purposes of removal. (Doc. 2.)

## II. STANDARD OF REVIEW

### A. Motion to Remand

A defendant may remove any civil action filed in state court to federal court if the district court would have had subject matter jurisdiction had the case been originally filed in federal

court. 28 U.S.C. § 1441. The party seeking removal to federal court bears the burden of establishing the district court has original jurisdiction over the matter. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). Removal petitions are strictly construed, with all doubts resolved against removal. *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989).

A defendant removing a case to federal court on the basis of diversity of citizenship jurisdiction has the burden of proving these jurisdictional requirements exist at the time of removal. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). If a case does not involve a federal question, complete diversity of citizenship must exist between the parties and the amount in controversy must exceed $75,000 for the federal court to have subject matter jurisdiction. 28 U.S.C. § 1332; *see U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992). The removal statute is construed strictly and narrowly against removal. *Her Majesty the Queen*, 874 F.2d at 339. If doubt exists as to the propriety of removal, the case should be remanded to state court. *Smith v. Nationwide Prop. & Casualty Ins. Co.*, 505 F.3d 401, 405 (6th Cir. 2007).

**B.     Motion to Dismiss**

A party may move to dismiss a claim for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, a court must accept all of the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irvwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 49 F.3d 710, 716 (6th Cir. 2005)). If a party presents matters outside the pleadings in connection with the motion, the court must either exclude those matters from consideration or treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d). Documents attached to pleadings are considered part of the pleadings for all purposes, however,

Fed. R. Civ. P. 10(c), and the consideration of documents referred to in a complaint and integral to the claims does not convert a motion to dismiss into a motion for summary judgment, *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

In deciding a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual content pleaded by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility as explained by the Court "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## III. DISCUSSION

The Court will first address Plaintiff's motion to remand. Because the Court concludes it does have subject-matter jurisdiction, in this case, the Court will then address the Moving Defendants' motion to dismiss. Although Plaintiff is the movant as to the motion to remand, the Moving Defendants bear the burden of proof on both motions.

### A. Motion to Remand

Plaintiff argues complete diversity does not exist because she has a valid cause of action against Aspen, a Tennessee citizen, and she argues the amount in controversy does not exceed $75,000 because the only relief she is seeking is to restrain Fannie Mae from proceeding with the

eviction and to set aside the foreclosure. The Moving Defendants contend the Court has diversity jurisdiction because Aspen is a nominal and fraudulently joined party and the value of the Property exceeds $75,000.

1. **Diversity of Citizenship**

When an action is removed based on diversity, federal jurisdiction attaches "only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." *SHR Ltd. P'ship v. Braun*, 888 F.2d 455, 456 (6th Cir. 1989). However, fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds. To prove fraudulent joinder, the removing party must demonstrate "a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). If there is a "colorable basis" for predicting a plaintiff may recover against non-diverse plaintiffs, the Court must remand the action to the state court in which it was brought. *Id.* In applying this rule, the district court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the nonremoving party; all doubts as to the propriety of removal are resolved in favor of remand. *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (internal quotation omitted).

A party bears a heavy burden when it relies on fraudulent joinder to establish subject matter jurisdiction. The law of fraudulent joinder "requires removing defendants to do more than simply articulate a basis for dismissal of the plaintiff's claims against the non-diverse defendants who have allegedly been fraudulently joined." *Waterloo Coal Co. v. Komatsu Mining Sys., Inc.*, No. C2-02-560, 2003 WL 124137, at *2 (S.D. Ohio Jan. 9, 2003). Similarly, a formal or nominal party "is one who has no interest in the result of the suit and need not have been made a party thereto." *Grant County Deposit Bank v. McCampbell*, 194 F.2d 469, 472 (6th Cir. 1952).

The benefit of the doubt given to a plaintiff in a fraudulent joinder inquiry is more deferential than the benefit of doubt given under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 846 (S.D. Ohio 2002). Because the fraudulent joinder jurisdictional inquiry is different from the inquiry on a motion to dismiss, there could be a colorable basis for predicting a plaintiff may recover on claims against a non-diverse defendant such that the defendant is not fraudulently joined, even if those claims later fail to survive a motion to dismiss in state court. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852–53 (3d. Cir. 1992).

The question the Court must decide is whether Aspen was fraudulently joined, thus allowing its citizenship to be disregarded. Answering this question is complicated by the lack of clarity as to the causes of action Plaintiff seeks to assert and the inconsistencies in and among Plaintiff's filings. Plaintiff's motion to remand expressly states that the only relief she is seeking is to enjoin Fannie Mae from evicting Plaintiff from the Property and to set aside the foreclosure deed. (Doc. 11 at 7.) Her Complaint, by contrast, asks that the Deeds of Trust, rather than the foreclosure deed, be set aside.[2] (Doc. 2-1 at 13.) Plaintiff's response to the Motion to Dismiss also argues in support of claims under the TCPA, for fraud, and for wrongful foreclosure. (Doc. 19 at 5–9.) Under any of these causes of action, the Court concludes the Moving Defendants have met their burden to show Plaintiff has no colorable claim against Aspen.

Plaintiff argues Aspen as trustee was integral to the execution of the reverse mortgage, which Plaintiff claims involved fraudulently causing her to execute two deeds of trust. Plaintiff

---

[2] Plaintiff's Complaint also asserts she "has suffered intentional emotional distress by all defendants." (Doc. 2-1 ¶ 24.) Plaintiff's Complaint never asks for relief for this alleged emotional distress, and none of her briefs refer to such a cause of action against any of the Defendants. To the extent Plaintiff intended to assert a cause of action for intentional infliction of emotional distress, which the Court doubts, the Court deems any such claim abandoned.

alleges in her Complaint that there was no valid reason for the execution of two deeds of trust and that the execution of two deeds of trust doubled the amount of money she owed for the mortgage. Plaintiff also alleges it was the second, allegedly improper, deed of trust that was foreclosed on. All of this, Plaintiff argues, gives her a valid cause of action against Aspen for fraud or misrepresentation.

As the Moving Defendants point out, the copies of the Deeds of Trust Plaintiff attached to her Complaint are incomplete. An examination of the complete documents yields no indication that it was improper for Plaintiff to execute both Deeds of Trust in connection with obtaining her reverse mortgage. Each Deed of Trust, in fact, explains its relationship to the other as part of the reverse mortgage structure. (Doc. 7-1 [First Deed of Trust] ¶ 13, "Relationship to Second Security Instrument"; (Doc. 7-2 [Second Deed of Trust] ¶ 13, "Relationship to First Security Instrument.") Both Deeds of Trust secure the same indebtedness and do not increase the amount of money Plaintiff owes. Finally, the exhibits attached to Plaintiff's Complaint make it clear that it was the First Deed of Trust that was foreclosed on, including by the foreclosure documents' specific references to the instrument number assigned to the First Deed of Trust as recorded by the Register of Deeds for Hawkins County. Plaintiff has not stated a colorable claim against Aspen for fraud or misrepresentation in relation to the execution of two deeds of trust.

Plaintiff's other potential causes of action fare no better. To the extent Plaintiff complains of the foreclosure sale or seeks to set aside the foreclosure deed, Aspen had been replaced as trustee before the sale took place. (*See* Doc. 1-1 at 29.) To the extent Plaintiff seeks to enjoin eviction proceedings, Aspen has taken no action to evict Plaintiff. To the extent Plaintiff seeks to have the Property returned to her, Aspen has no interest in the Property to return. And to the extent Plaintiff asserts a claim against Aspen under the TCPA, Plaintiff's

claim is barred for the same reason the Court will address below as to the motion to dismiss—any claim under the TCPA is barred by the five-year statute of repose.[3]

Because Aspen was fraudulently joined, the Court disregards its citizenship and concludes there is complete diversity of citizenship in this matter.

### 2. Amount in Controversy

Plaintiff asserts in her motion to remand that the only relief she seeks is injunctive relief against eviction and setting aside the foreclosure and the foreclosure deed. (Doc. 11 at 7.) As discussed in the foregoing section, this assertion contradicts the position Plaintiff takes in response to the motion to dismiss, in which she argues she is entitled to damages under the TCPA. Regardless of this discrepancy, the Court concludes the Moving Defendants are correct that the amount in controversy exceeds $75,000.

In an action seeking injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 460 F.3d 818, 829 (6th Cir. 2006)). Whether the object of the litigation is to enjoin Plaintiff's eviction, to set aside the foreclosure sale, or to set aside the Deeds of Trust, the object of the litigation is the Property, and the value at issue is the value of the Property. Plaintiff asserts the value of the Property in 2008 was $156,700. The amount of the note as secured by the Deeds of Trust was $285,000. The Property sold at foreclosure for $180,836. All of these amounts are well in excess of the $75,000 jurisdictional threshold. The Court concludes that the Moving Defendants have established that the amount in controversy is in excess of $75,000.

---

[3] In addition, as explained above, the allegedly unfair and deceptive act of having Plaintiff execute both Deeds of Trust was neither unfair nor deceptive.

Because there is complete diversity among the parties and the amount in controversy is in excess of $75,000, the Court has subject matter jurisdiction over this action and will **DENY** Plaintiff's motion to remand.

### B. Motion to Dismiss

The Moving Defendants argue Plaintiff has failed to state a claim against them for violation of the TCPA, for fraud, for wrongful foreclosure, to quiet title, or for declaratory or injunctive relief. (Doc. 7.) Plaintiff responds only as to the TCPA, fraud, and wrongful foreclosure. (Doc. 19.) Given the lack of clarity as to Plaintiff's causes of action in her complaint and her failure to respond to the Moving Defendants' arguments on these issues, the Court concludes Plaintiff did not intend to assert a claim to quiet title or for declaratory relief. In the alternative, as the Moving Defendants argue in their reply (Doc. 22), Plaintiff has abandoned any such claims by failing to respond to the Moving Defendants' arguments. The Moving Defendants are also correct that injunctive relief is a remedy rather than a cause of action and is therefore unavailable if Plaintiff cannot state a claim for relief under an appropriate legal theory.

#### 1. The TCPA

The Moving Defendants argue Plaintiff's TCPA claim is barred both by the one-year statute of limitations and the five-year statute of repose. Plaintiff responds that her claim was brought within one year of her discovery of Defendants' unlawful acts and is therefore not barred by the statute of limitations. She also argues the statute of repose should be waived based on the doctrine of fraudulent concealment. Because the Court finds the statute of repose to be dispositive of Plaintiff's claim, the Court need not consider the statute of limitations.

The TCPA contains the following time limitations:

Any action commenced pursuant to § 47-18-109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice, but in no event

shall an action under § 47-18-109 be brought more than five (5) years after the
date of the consumer transaction giving rise to the claim for relief.

Tenn. Code Ann. § 47-18-110. Plaintiff executed the Deeds of Trust on August 8, 2008. She filed this action on October 12, 2016, more than eight years later. Plaintiff's TCPA claim is therefore barred by the five-year statute of repose.

Plaintiff argues the TCPA's statute of repose can be waived where there has been fraudulent concealment. Plaintiff relies primarily on *Fahrner v. SW Manufacturing, Inc.*, 48 S.W.3d 141 (Tenn. 2001) and *French v. First Union Securities, Inc.*, 209 F. Supp. 2d 818 (M.D. Tenn. 2002). In *Fahrner*, an employment discrimination case, the Tennessee Supreme Court actually addressed the tolling of statutes of ***limitations***, mentioning a statute of repose only in a single parenthetical. In *French*, the district court had no other authority for concluding the TCPA's statute of repose could be tolled than the single parenthetical in *Fahrner*. The Court does not find either case persuasive that Tennessee courts would toll the TCPA statute of repose based on fraudulent concealment. *See Cates v. Stryker Corp.*, No. 3:10-CV-546, 2012 WL 256199, at *5 (E.D. Tenn. Jan. 27, 2012) (finding *Fahrner* and *French* not persuasive to toll the TCPA statute of repose based on fraudulent concealment) (citing *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 184–85 (Tenn. 2000)).

The Tennessee Supreme Court, on the contrary, has explained that where the Tennessee legislature has intended statutes of repose to be subject to tolling, the legislature has expressly incorporated that exception into the relevant statute. *Penley*, 31 S.W.3d at 184–85 (distinguishing statutes of limitations from statutes of repose and rejecting argument that statute of repose for Tennessee Products Liability Act was subject to tolling for periods of mental incompetency by the plaintiff). Thus, for example, the statute of repose for a Tennessee medical malpractice case is expressly subject to tolling for fraudulent concealment. *See* Tenn. Code Ann.

§ 29-26-116(a)(3) ("In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant . . . ."). Plaintiff's reliance on medical malpractice cases in which the statute of repose was tolled is therefore misplaced.[4] The Court concludes Plaintiff's TCPA claim is barred by the five-year statute of repose in Tenn. Code Ann. § 47-18-110.

The Moving Defendants argue in the alternative that Plaintiff's allegations are insufficient to support a TCPA claim on various substantive grounds, and that Plaintiff has not alleged any specific act of fraudulent concealment that could toll the statute of limitations or statute of repose. Plaintiff has not responded to these arguments. If Plaintiff's TCPA claim were not barred by the statute of repose, Plaintiff's failure to respond to the Moving Defendants' additional arguments would, alternatively, entitle the Moving Defendants to dismissal of Plaintiff's TCPA claims against them.

### 2. Fraud

The Moving Defendants argue Plaintiff fails to state a claim against them for fraud because all of the allegations of wrongdoing in obtaining the reverse mortgage are directed toward Financial Freedom, not the Moving Defendants, and her allegations of irregularities in the foreclosure are contradicted by the documents attached to the Complaint and Plaintiff's admission that she had not paid city taxes or maintained flood insurance as required under the Deeds of Trust. Plaintiff's response continues to focus on the alleged wrongdoing of parties other than Fannie Mae and CIT Bank in inducing her to obtain the reverse mortgage. Her response refers to alleged fraud by the Moving Defendants only in an indirect and general way:

---

[4] Also unpersuasive is Plaintiff's reliance on *Soldano v. Owens Corning Fiberglass Corp.*, 696 S.W.2d 887 (Tenn. 2005), which dealt with the statute of limitations in a construction dispute.

> Had it not been for the fraud perpetrated upon Ms. Bell by Defendants [Financial Freedom] and Aspen she would not have signed two deeds of trust and Defendant CIT would not have acquired title to her home to then convey its interest to Defendant Fannie Mae. Since Defendants Fannie Mae and CIT were a party to the fraudulent scheme and acquired the property from Ms. Bell they are both proper parties to this action.

(Doc. 19 at 8.) These allegations do no more than raise a "sheer possibility" that the Moving Defendants have acted unlawfully, if they even do so much. *See Iqbal*, 556 U.S. at 678. Plaintiff has failed to state a claim against the Moving Defendants for fraud.

### 3. Wrongful Foreclosure

Finally, the Moving Defendants argue Plaintiff fails to state a claim against them for wrongful foreclosure because she fails to allege any irregularity or illegality in the foreclosure sale itself. Plaintiff insists in response that her allegation that she was current on her mortgage payments at the time of the foreclosure sale makes the foreclosure sale wrongful. In addition, Plaintiff argues her counsel's inability to find a document appointing CIT Bank as trustee makes the foreclosure wrongful.

Under Tennessee law, a foreclosure sale may be set aside if the foreclosure sale was not "legally held, conducted, and consummated," or if there is "evidence of irregularity, misconduct, fraud, or unfairness on the part of the trustee or the mortgagee that caused or contributed to an inadequate price." *Holt v. Citizens Central Bank*, 688 S.W.2d 414, 416 (Tenn. 1984). Plaintiff has not alleged facts that would state a claim for wrongful foreclosure that is plausible on its face. *See Twombly*, 550 U.S. at 570. Plaintiff need not have been delinquent in her mortgage payments to give the holder of the First Deed of Trust the right to foreclose, where she admits she failed to fulfill other contractual obligations, namely paying city property taxes and maintaining flood insurance. And Plaintiff's argument that the foreclosure sale was irregular because she cannot locate a document making CIT Bank the trustee to conduct the foreclosure

13

sale is inconsistent with the documents attached to her Complaint, specifically the transfer of the First Deed of Trust to CIT Bank on October 22, 2015 (Doc. 1-1 at 26–27) and CIT Bank's substitution of Shapiro as trustee on March 16, 2016 (*id.* at 29), both of which were executed before Shapiro conducted the foreclosure sale on May 16, 2016.

Plaintiff has failed to state a claim for relief for wrongful foreclosure that is plausible on its face. The Moving Defendants are therefore entitled to the dismissal of Plaintiff's wrongful foreclosure claims against them, and the Court will **GRANT** their motion to dismiss.

## IV. CONCLUSION

The Court will **DENY** Plaintiff's motion to remand (Doc. 10), **GRANT** Fannie Mae's and CIT Bank's motion to dismiss (Doc. 7), and **DISMISS** Plaintiff's claims against Fannie Mae and CIT Bank.

**An appropriate order will enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**